IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:   5:08cr5/RS/GRJ
                                                    5:11cv353/RS/GRJ

KARRIECE QUONTREL DAVIS

---

## ORDER AND REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and supporting memorandum of law, (docs. 202, 203), and two motions to supplement or amend the § 2255 motion.  (Docs. 207, 212.)  The Government filed a response (Doc. 223), and Defendant filed a two-part reply and exhibits thereto. (Docs. 230–232.)  After a careful review of the record and the arguments presented, the Court concludes that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND

Defendant was charged in a seven count superseding indictment with knowing possession of counterfeit currency ("Count One"), four counts of possession with intent to distribute a controlled substance on specified dates certain (Counts Two, Five, Six, and Seven), possession of a firearm in furtherance of a drug trafficking crime (Count Three) and possession of a firearm by a convicted felon (Count Four).  The substantive drug counts were alleged to involve 50 grams or more of cocaine base, an unspecified amount of cocaine base, an unspecified amount of cocaine, and five grams or more of

cocaine base, respectively.  (Doc. 25).  The district court granted Defendant's motion to sever the trial on Count One from trial on the remaining counts over the Government's objection.  (Docs. 23, 30, 32.)

Defendant went to trial on Count One, on May 5, 2008, represented by Tanya Higgins.  The Government's case was based on a citizen's discovery of counterfeit currency printed on ordinary copy paper and a scissors package from which law enforcement recovered Defendant's fingerprints.  Although there were no witnesses who had seen Defendant in possession of the items recovered by law enforcement, the Government also presented the testimony of two individuals who had seen Defendant in possession of counterfeit bills, or received such currency from him.  The jury convicted Defendant as charged, and the court denied Defendant's motions for a new trial and for a judgment of acquittal.  (Docs. 49, 50, 77, 78, 83.)  The day after the counterfeiting trial, the Government filed its Information and Notice of Intent expressing its intent to seek enhanced penalties on Defendant's drug offenses due to his prior felony drug convictions. (Doc. 43.)

Defendant's trial counsel, Tanya Higgins, moved to suppress drug-related evidence seized at the premises of 3527 Treasure Circle, Panama City Beach, Florida on the ground that there was no probable cause to issue the warrant. (Doc. 38.)  The Government opposed the motion.  (Doc. 54.)  After Defendant's trial, Ms. Higgins filed two motions requesting permission to withdraw, which were opposed by the Government.  (Docs. 57, 64, 66.)   After a hearing, the court allowed Ms. Higgins, who

had been retained, to withdraw and it appointed Spiro Kypreos as counsel for Defendant.  (Docs. 76, 79, 83.)

Defendant, through Mr. Kypreos, filed a motion to sever the trial of Counts Two through Four, which occurred in 2005, from Counts Five through Seven, which occurred in 2007 and 2008, and also moved to suppress certain statements and unlawful evidence.  (Docs. 92–94.)  The court denied the motion for severance and each of the motions to suppress after a hearing at which Defendant was still represented by Mr. Kypreos.  (Docs. 100, 104.)  Attorney Susan James filed a notice of appearance on July 31, 2008.  (Doc. 101.)  Both she and Mr. Kypreos remained counsel of record thereafter, with each attorney separately filing proposed jury instructions and voir dire. (*See* Docs. 106–110; 114.)

The Friday before Defendant's trial on the remaining counts of the indictment was scheduled to begin, Defendant entered a plea of guilty to Counts Five, Six and Seven pursuant to a written plea agreement and statement of facts.  (Docs. 112–114, 150.)  The agreement was signed by Defendant and Mr. Kypreos.  After Defendant entered his guilty plea, the court dismissed Counts Two, Three and Four upon motion of the Government, and Mr. Kypreos was allowed to withdraw.  (Docs. 114, 115.)  Two months later, shortly before the Pre-Sentence Investigation Report was released, Defendant retained Jean Marie Downing to represent him at sentencing.  Ms. Downing was substituted for Ms. James.  (Docs. 118, 119, 122.)

The Presentence Investigation Report ("PSR") was disclosed to the defense on October 10, 2008.  (*See* Doc. 117.)[1]  Defendant's adjusted offense level on Count One was 9, and on Counts Five, Six, and Seven it was 26.  (PSR ¶¶ 26–38).  His total offense level after grouping was 26, as no further adjustments, *i.e.* for acceptance of responsibility, applied.  (PSR ¶¶ 39–50).  Defendant had 40 criminal history points, well in excess of the number of points needed to establish a criminal history category of VI. (PSR ¶¶ 79–81).

Defendant, through his attorney Jean Marie Downing, made four objections.  He objected to the lack of reduction for acceptance of responsibility, the lack of reduction due to his minor role in the conspiracy, the quantity of drugs attributed to him, and to the career offender adjustment.  The probation officer concurred with the latter objection and the career offender adjustment was removed, resulting in a significant reduction in the applicable guidelines range.  (PSR ¶¶ 139–146).

At sentencing, the court heard testimony from Bay County Sheriff Robert Duncan, Defendant Davis, and David Laron Hamilton, who had provided drugs to Defendant, and overruled the remaining three objections.  (Doc. 147 at 51).  The Court sentenced Defendant at the top of the guidelines range to a term of 150 months imprisonment, noting Defendant's extraordinary criminal history.  (*Id*. at 59–60). Defendant's sentence also included an eight year term of supervised release.  (*Id*. at 61).

---

[1]The court has reviewed a copy of the PSR, although it is not part of the electronic record.

Case Nos.: 5:08cr5/RS/GRJ; 5:11cv353/RS/GRJ

Ms. Downing moved to withdraw after sentencing, and attorney Noel Lawrence was appointed to represent Defendant on appeal.  (*See* Docs. 125, 126, 132, 153.) Defendant challenged various aspects of both his trial and sentencing before the Eleventh Circuit.  (Doc. 167.)  He argued that the evidence was insufficient to support his conviction for possession of counterfeit currency with the intent to defraud, and he challenged his 150 month sentence.  His challenge to the sentence was based upon three distinct grounds. First, he claimed that the district court lacked jurisdiction to impose an enhanced sentence because the Government's notice of enhancement failed to comply with 21 U.S.C. § 851. Second, he argued that the district court incorrectly calculated his guidelines range by improperly including certain relevant conduct. Lastly, he argued that his sentence was substantively unreasonable.  The Eleventh Circuit affirmed Defendant's conviction and sentence.  (Doc. 167; *United States v. Davis*, 370 F. App'x 974 (2010) (*Davis I*)).

After his unsuccessful appeal, Defendant then filed a motion attempting to compel the Government to file a substantial assistance motion on his behalf.  The district court's denial of the motion was affirmed by the Eleventh Circuit.  (Docs. 170, 171, 229; *United States v. Davis*, Case No. 10-14097, 2012 WL 118444 (11th Cir. 2012) (*Davis II*)).  The Supreme Court denied certiorari.  (Doc. 249.)

In the present motion and amendments thereto, Defendant raises more than seventy grounds for relief. The Government opposes the motion in its entirety.

# LEGAL ANALYSIS

### *Standard of Review*

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  *Nyhuis*, 211 F.3d at 1343

(quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998);  *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."  *Lynn*, 365 F.3d at 1232 n. 14 (quoting *Mills*, 36 F.3d at 1055).   Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."  *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  *Lynn*, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d, 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). *Strickland's* two part test also applies to guilty pleas. *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) (citing *Hill v. Lockhart,* 474 U.S. 52, 58 (1985)).  A defendant will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial. *Id* at 1384–85 (quoting *Hill*, 474 U.S. at 59).  A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice. *Pericles v. United States*, 567 F. App'x 776, 2014 WL 2198514 at *5 (11th Cir. 2014) (quoting *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)). In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley,* 209 F.3d 1243, 1248 (11th Cir.2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.  Strickland, 466 U.S. at 689.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.  When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."  *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.  "The likelihood of a different result must be

substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, ___, 131 S.Ct. 770, 792 (2011) (quoting *Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (citing *Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551,

1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing

*Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and

presumptions set forth above, "the cases in which habeas petitioners can properly

prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313.  This is because the

test is not what the best lawyers would have done or even what most good lawyers

would have done, but rather whether some reasonable lawyer could have acted in the

circumstances as defense counsel acted.  *Dingle*, 480 F.3d at 1099; *Williamson v.*

*Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to

have been unwise in retrospect, the decision will be held to have been ineffective

assistance only if it was 'so patently unreasonable that no competent attorney would

have chosen it.'"  *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d

1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether

counsel was inadequate, but rather whether counsel's performance was so manifestly

ineffective that "defeat was snatched from the hands of probable victory."  *United States*

*v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing

"unless the motion and files and records conclusively show that the prisoner is entitled

to no relief," a defendant must support his allegations with at least a proffer of some

credible supporting evidence.  *See Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th

Cir. 2006) (citing *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring

to "our clear precedent establishing that such allegations are not enough to warrant an

evidentiary hearing in the absence of any specific factual proffer or evidentiary

support"); *Hill v. Moore,* 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an

evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner

must proffer evidence that, if true, would entitle him to relief.")); *Ferguson v. United

States*, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous

claims, conclusory allegations unsupported by specifics, or contentions that are wholly

unsupported by the record.  *Peoples v. Campbell,* 377 F.3d 1208, 1237 (11th Cir.

2004); Tejada, 941 F.2d at 1559; *Holmes v. United States*, 876 F.2d 1545, 1553 (11th

Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than

conclusory allegations do not warrant a hearing.  *Lynn,* 365 F.3d at 1239.

### Grounds 1, 2, and 72[2] –Acceptance of responsibility

Three of Defendant's claims relate to the district court's decision not to award

him credit for acceptance of responsibility, and appellate counsel's allegedly

unconstitutional failure to raise this claim on appeal.

As discussed above, the charges against Defendant were severed, and he

elected a jury trial on Count One and later pleaded guilty to Counts Five, Six, and

Seven in exchange for the dismissal of counts Two, Three and Four.  At sentencing,

Defendant's attorney argued that the fact that he had gone to trial on a single count of

the indictment should not preclude him from receiving acceptance of responsibility in

light of his guilty plea to the three remaining counts upon which he was to be

---

[2]To minimize repetition, the undersigned has attempted, to the extent practicable, to group related grounds for relief for discussion.

sentenced.  Counsel conceded that the guidelines did not provide for "splitting the difference" and awarding Defendant a single point reduction, and thus maintained that he should be entitled to a two-point reduction.  (Doc. 147 at 6.)  The Government argued that the fact that Defendant continued to commit criminal offenses while he was out on bond and even while in the Bay County Jail showed that he had not accepted responsibility.  (*Id*. at 7.)

Defendant now claims in Ground 1 that the district court erred in denying him acceptance of responsibility as a result of his decision to go to trial.  Defendant claims that he only went to trial to preserve a constitutional issue–specifically his right to a Speedy Trial–an issue that was not mentioned at sentencing.  Defendant also claims that his "earlier conduct should not have vitiate (sic) the effect of his otherwise exemplary acceptance of responsibility." (Doc. 202 at 3.)   As further evidence of his "acceptance" he cites his admission at sentencing, after he had already been convicted, that he had passed counterfeit money.  (*See* Doc. 147 at 26.)

A defendant may receive a two-level reduction in his offense level if he clearly demonstrates acceptance of responsibility for his offense.  U.S.S.G. § 3E1.1(a).  A reduction is not a matter of right, even for a defendant who pleads guilty.  U.S.S.G. § 3E1.1, comment. (n.3); *see also United States v. Wade,* 458 F.3d 1273, 1279 (11th Cir.2006).  The defendant carries the burden of clearly demonstrating his acceptance of responsibility, and must present more than just a guilty plea.  *Wade*, 458 F.3d at 1279.  The commentary to section 3E1.1 enumerates myriad considerations that may be weighed in assessing whether a defendant has accepted responsibility.  Relevant to

this case, these considerations include whether a defendant has truthfully admitted the conduct comprising the offenses of conviction, truthfully admitted and not falsely denied any additional relevant conduct, and voluntarily terminated and or withdrawn from criminal conduct and associations.  The commentary specifically states that the adjustment is not intended to apply to a defendant who puts the Government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.  Conversely, a defendant who goes to trial only to preserve issues unrelated to factual guilt is not precluded from benefitting from this adjustment, but whether such a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct. *See* U.S.S.G. 3E1.1, comment. (n. 1–3).

In this case, the district court's decision not to award the acceptance adjustment was based in part on Defendant's decision to go to trial on Count One of the indictment. Defendant's claim that the reason he went to trial was to preserve a Speedy Trial claim is unsupported by the record.  Defendant even concedes in his reply that the alleged Speedy Trial issue was mentioned for the first time in his § 2255, and he attempts to deflect blame to his attorney for this omission.  (Doc. 230 at 17.)[3]  Furthermore, Defendant's actions with respect to this case were inconsistent with a full acceptance of

---

[3] Although both parties say that the speedy trial issue was mentioned for the first time in Defendant's § 2255, it was mentioned at a hearing held on May 29, 2008 after Defendant was convicted on Count One of the indictment.  Defendant stated to the court that he was "not worried about the speedy trial."  (Doc. 148 at 11.)  The court notes that although Defendant spoke at length during the May 29, 2008 evidentiary hearing, he never mentioned that he went to trial for any reason other than to contest his guilt, and at one point even said he was charged of things he was "not guilty of."  (*Id*. at 19.)

responsibility.  As testified by Deputy Duncan at Defendant's sentencing, Defendant had never given a truthful and candid debriefing, and he continued his criminal activity while released on bond.  (Doc. 147 at 10–11, 13.)   Defendant also contested his responsibility for drugs that were properly considered as relevant conduct.  *(See* Doc. 147 at 39–50.)

To prevail on a claim for ineffective assistance of appellate counsel, a defendant must show that (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal.  *Shere v. Sec'y Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008); *see Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir.2009) (holding that claims for ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Counsel is clearly not ineffective for failing to raise a meritless issue on appeal.  *Shere*, 537 F.3d at 1311; *Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir.1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").

To determine whether defense counsel rendered ineffective assistance by failing to raise certain issues on appeal, the court may consider the merits of the issues the defendant alleges counsel was derelict in not raising on appeal.  *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988); *Reutter v. Secretary for Dept. of Corrections*, 232 F. App'x 914, 917 (11th Cir. 2007) (determining that counsel's decision not to raise a particular argument on appeal, in light of his having raised several important claims, was likely a strategic decision to "winnow out weaker arguments").   Of course,

appellate counsel is not ineffective for failing to raise claims that are reasonably considered to be without merit. *Brown v. United States*, 720 F.3d 1316, 1335 (11th Cir. 2013); *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984).

The guidelines recognize that the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility, and as such, the sentencing judge's determination is entitled to great deference on review. U.S.S.G. § 3E1.1, comment (n. 5). The district court's factual findings concerning an acceptance of responsibility adjustment are reviewed only for clear error. *United States v. Dormeus*, 523 F. App'x 545 (11th Cir. 2013) (quoting *United States v. Williams*, 408 F.3d 745, 756 (11th Cir. 2005)). In this case, Defendant's admission that his Speedy Trial claim was never mentioned before the instant post-conviction proceedings is likely alone sufficient to defeat his claim. Putting the Government to its proof at trial is inconsistent with acceptance of responsibility. *See* U.S.S.G. 3E1.1, comment. (n.2). Defendant's attempt to claim that he proceeded to trial on one, but not all counts of the indictment to preserve the admittedly recently fabricated claim regarding a Speedy Trial violation is disingenuous. A failure to provide accurate information to authorities or a return to criminal conduct also weigh against a finding that a defendant is deserving of an acceptance adjustment. *See, e.g., United States v. McDonald*, 497 F. App'x 878 (11th Cir. 2012); *United States v. Scarborough*, 454 F. App'x 722 (11th Cir. 2011); *United States v. Amedeo*, 370 F.3d 1305, 1320–21 (11th Cir. 2004); *United States v. Arguedas*, 86 F.3d 1054, 1060 (11th Cir. 1996). Defendant has not shown that

appellate counsel was constitutionally ineffective for failing to challenge the district court's finding that Defendant was not entitled to a reduction for acceptance of responsibility.

### Grounds 3 and 20–Representation at Plea

Grounds 3 and 20 both relate to Defendant's representation during plea negotiations and the plea proceeding.  Defendant contends that attorney Susan James was constitutionally ineffective because she did not object to the district court's commission of "structural error."  The error in question is the district court's decision to overlook the notice of appearance filed by Ms. James and allow Mr. Kypreos to represent Defendant during the plea proceedings that Ms. James was unable to attend. Defendant also asserts that Ms. James was ineffective in that she did not file a motion to continue the plea negotiation and the plea hearing while she was in trial in Georgia, which left Defendant without the assistance of counsel during plea negotiations.

Defendant was represented during the plea proceeding by Mr. Kypreos, who informed the court that he had not been relieved as court appointed counsel, and that Defendant had retained co-counsel in the case.  (Doc. 150 at 2.)  Defendant was placed under oath for the proceeding.  (*Id*. at 3.)  In response to questioning from the court, Defendant acknowledged that he had spoken to his attorneys about the plea agreement and the Sentencing Guidelines. (*Id*. at 10–11).  The court advised Defendant that although Mr. Kypreos had years of experience dealing with the sentencing guidelines, neither counsel nor the U.S. Attorney could predict how the court would interpret and apply the guidelines in Defendant's case.  Defendant responded

that he understood  (*Id*. at 11-12).  Defendant then acknowledged that he had read and

signed the plea agreement, and that he agreed with the facts set forth in the plea

agreement that pertained to his guilty plea.  Counsel clarified that the passages in the

agreement with which Defendant did not agree did not affect his plea to the underlying

counts.  (*Id*. at 12–14).  Defendant affirmed that he had sufficient time to talk to his

attorney about the Plea and Cooperation Agreement, that he understood its terms, and

that the plea agreement represented his entire agreement with the Government.  (*Id*. at

15).  Defendant acknowledged that he was pleading guilty of his own free will, that he

had  sufficient time to discuss his case with his lawyers, that they had answered all his

questions, that he was satisfied with their advice and that he had no complaints.  (*Id*. at

16).  Counsel then summarized for the court all of the contact he had with Defendant to

discuss his case and the plea agreement, and his understanding of contact Ms. James

had with Defendant.  (*Id*. at 17).  Defendant reiterated that he had no complaints with

Mr. Kypreos at that time, before entering his plea of guilty.  (*Id*. at 18).  At the

conclusion of the proceedings, Mr. Kypreos noted that Defendant had retained private

counsel in the case, and that he was appearing in Defendant's behalf with Ms. James'

knowledge and approval.  (*Id*. at 21).  Mr. Kypreos explained:

> When the defendant first indicated, just recently this week that he wished
> to change his plea, I made certain Ms. James was aware and it was my
> understanding she was in direct contact with Mr. Simpson and the
> defendant, and so she's been fully involved in this.  I just want, don't want
> the record to suggest his chosen counsel has been left out in any way.
> She's fully participated in the negotiations that led up to this plea today,
> and I'm here with her approval.

(Doc. 150 at 21–22).[4]  Defendant did not contradict counsel's representation to the court.  Mr. Kypreos requested leave to withdraw and allow Ms. James to be substituted for him as continuous counsel.  (*Id*. at 22.)  The court inquired of Defendant whether he approved and when Defendant indicated that he did, it was so ordered.  (*Id*. at 22–23.)

The Supreme Court has held that the erroneous deprivation of the right to counsel of choice "unquestionably qualifies as structural error."  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) (citing *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993)).  A structural error requires automatic reversal.  *See Glebe v. Frost*, 135 S.Ct. 429, 430 (2014).  Under the circumstances in this case, however, Defendant cannot show that he was deprived of counsel of choice.  Although he had retained Ms. James, at no point during the plea proceeding did Defendant express any dissatisfaction with the fact that Mr. Kypreos appeared in his behalf, in lieu of Ms. James.  Both attorneys were still counsel of record at that point, and the court did not "deprive" Defendant of Ms. James' presence.  As set forth in Ms. James' letter to Defendant, it was Defendant's decision to plead guilty on the last business day before trial coupled with Ms. James' out-of-state trial conflict that resulted in the "dual" representation of him during the plea negotiations and proceedings.

---

[4] Further evidence of Ms. James' involvement is contained in a September 11, 2008, letter she wrote to Defendant in which she states, in relevant part, that she was preparing for trial when Defendant, on his own, reached out to agents to cooperate, as a result of which she spent the Thursday night before trial and Friday morning dealing with Defendant and the prosecutor trying to work out the plea he wanted.  (Doc. 170 at 44.) The letter also reflects that although Defendant appeared to believe to the contrary, the contract Defendant signed with Ms. James provided that other lawyers could work on Defendant's case.  (*Id*.)

Counsel is not ineffective for failing to preserve or argue a meritless claim. *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008); *see also* <u>Sneed v. Florida Dep't of Corrections</u>, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless <u>Batson</u> claim not ineffective assistance of counsel)*;  Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence).  There was no structural error in this case, and Ms. James was not constitutionally ineffective for her failure to lodge an objection to such error.

### Grounds 4, 29, 34,[5] 35, 36, 52, 53, and 59 [6]

Eight of Defendant's claims pertain to alleged deficiencies in the treatment by sentencing counsel of the attribution of 1500 grams of cocaine to him.  Defendant contends that attorney Downing was constitutionally ineffective because she did not object to Defendant being held accountable for cocaine that was not encompassed in his plea or found by a jury beyond a reasonable doubt.  In related claims, he asserts

---

[5] Defendant's motion to supplement contains additional argument with respect to Ground 34. (*See* Doc. 207 at 11.)

[6] Defendant's argument with respect to Ground 59 appears incomplete.  (Doc. 202 at 19.)

that Ms. Downing was ineffective in that she failed to request permission to cross examine government witness Antonio Vickers, whose statement provided the basis for attributing this cocaine to Defendant. Moreover, Defendant argues that his attorney's cross examination of David Hamilton was deficient and that she failed to "object" to inconsistencies in Hamilton's testimony or to the fact that there was a retaliatory animus for his testimony.

Because Defendant's offense conduct involved both cocaine powder and cocaine base, his base offense level was calculated using the marijuana equivalency tables.  (PSR ¶¶ 13–21, 33).  The 9.9 grams of cocaine base and 1,594.3 grams of cocaine powder translated to 516.86 kilograms of marijuana.  (PSR ¶¶ 21, 33). Defendant's base offense level was 26 after the application of a two level reduction pursuant to Application Note 10(D)(i) of the commentary to § 2D1.1(c). (PSR ¶ 33). Without any powder cocaine, Defendant's base offense level pursuant to the 2007 version of the guidelines would have been 24.[7]

Defendant challenged the district court's inclusion of the 1500 grams of cocaine powder into its sentencing calculations on appeal.  The Eleventh Circuit noted that Defendant did not dispute that he was involved in the drug deals or that they involved 1500 grams of cocaine.  Instead, Defendant argued that he should not have been held accountable for these drugs because the deals in question were too remote in time and too dissimilar to the offense conduct to which he pled guilty.  The Eleventh Circuit found

---

[7] Under the 2014 version of the guidelines, 9.9 grams of cocaine base would correspond to a base level of 16.

that there was no error in the district court's finding that the earlier uncharged drug sales with Hamilton constituted relevant conduct for sentencing purposes.  *Davis I,* 370 F. App'x at 979–980.

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  *Nyhuis*, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Defendant's assertion that counsel was constitutionally ineffective for failing to make certain objections and arguments is essentially an attack on the Eleventh Circuit's conclusion, presented under the guise of an ineffective assistance of counsel claim.  Although such a claim is arguably procedurally barred, after a review of the record, the undersigned concludes that for the following reaons none of Defendant's arguments are well-founded.

First, Defendant's assertion that counsel did not object to the inclusion of these drugs in the total amount for which he was held accountable is not true, as counsel did

raise this objection.  (*See* doc. 147 at 39-40.)  There is no constitutional requirement that relevant conduct for purposes of calculating the advisory guidelines range be submitted to a jury for determination, and in any event, in light of Defendant's guilty plea to the controlled substance offenses, there would have been no jury to make such a determination.

Second, Defendant's assertion in Grounds 29 and 36 that counsel should have "objected" that Hamilton's testimony was insufficient to support the district court's finding that he should be accountable for 1500 grams of powder is essentially the challenge he raised on appeal.  In light of the Eleventh Circuit's finding, such a challenge would have been futile.

Defendant also asserts that counsel should have specifically questioned Hamilton at sentencing about the dates of the alleged cocaine sales, and should have argued that Hamilton's testimony was motivated by animus towards Defendant as a result of Defendant "setting Hamilton up" in a controlled buy in 2005.  Whether Hamilton would have been able to recall the precise dates of the prior cocaine sales if he had been so questioned is uncertain.  Based on the record, the court concludes that counsel's cross-examination of Hamilton brought out salient points, including the fact that Hamilton had benefitted from a substantial assistance motion prior to his sentencing, that he knew what a Rule 35 motion was, that he had previously given inconsistent information to law enforcement, and that he had met with the Government and Deputy Duncan prior to his testimony. (Doc. 147 at 46–48.)  Counsel's failure to specifically question Hamilton about the dates of prior sales, in light of his seeming lack

of detailed recollection, was not constitutionally ineffective, as such questioning would not have altered the outcome of the proceedings.

The facts surrounding this controlled buy resulting in Hamilton's alleged animus toward Defendant were set forth in the PSR and the court was thus well aware of them. Furthermore, the fact that Defendant was able to set up the controlled buy with Hamilton corroborated the existence of a prior relationship between the two men, a relationship which Defendant never denied.

Defendant's assertion that the Government relied on a statement from Antonio Vickers to support its position that Defendant should be held accountable for the 1500 grams of cocaine is mistaken.  Although the PSR mentioned that Vickers had observed two of the drug deals between Hamilton and Defendant (PSR ¶ 14), Vickers was not called as a witness and thus was not subject to cross-examination.  There was no violation of Defendant's right to confront witnesses, and counsel was not constitutionally ineffective for failing to call as a witness an individual who potentially had more incriminating evidence to present against her client.

Defendant's suggestion that counsel should have argued that there was no evidence that Defendant actually sold, rather than used, the 1500 grams of cocaine powder he purchased from Hamilton has no apparent factual basis and strains credulity.  As noted by the Government, if Defendant had made such an implausible argument, he would have foreclosed any remaining opportunity Defendant had of earning a substantial assistance motion.  (*See* doc. 147 at 45.)

In sum, Defendant has not established that attorney Downing's representation of him with respect to the quantity of powder cocaine attributed to him was constitutionally deficient or that he is entitled to relief.

### Grounds 5, 19, 46–Discovery issues relating to trial on Count One

Defendant claims that trial counsel Tanya Higgins was constitutionally ineffective when she failed to file a pre-trial motion for a continuance of the trial on Count One after she did not receive discovery from the Government until the Friday preceding the trial. Defendant claims that counsel did not have time to prepare a defense for the case, to conduct an investigation, or interview witnesses, or obtain impeachment evidence on government witnesses Whitaker and Hardrick.  This issue was also the subject of Defendant's Pro Se Motion for New Trial Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, which the district court denied without comment.  (Docs. 77, 82.)

In response, the Government references an undated letter from Assistant United States Attorney Michael Simpson addressed to Ms. Higgins which discussed discovery and other pretrial matters.[8]  The majority of the matters raised in this letter were well addressed or well handled by counsel.  The only specific area that merits discussion is Defendant's suggestion that he was prejudiced because counsel could not present proper impeachment evidence against Tyrone Whitaker.

Mr. Whitaker was one of two Government witnesses who testified to having seen Defendant with counterfeit currency.  Whitaker admitted during his testimony that he

---

[8]The Government's statement in its reply that the letter was created on August 1, 2008 and its reference to Ms. Higgins' receipt of discovery on August 2, 2008 are clearly scrivener's errors as the trial in the counterfeit case took place on May 5, 2008.

had been convicted of, among other things, six counts of uttering forged bills that he had obtained from Defendant.  Whitaker testified that he helped Defendant make a purchase using the counterfeit currency,[9] but that afterward the person from whom they made the purchase called Whitaker and told him that the money was counterfeit. Whitaker also testified that Defendant had dropped $10,000 in counterfeit money in his lap on another occasion, while commenting that Whitaker could not "spend the money in stores."  Although he admitted that he had never seen Defendant actually making the counterfeit money, Whitaker had seen the machine Defendant used to make the bills and also had seen Defendant with counterfeit money on a number of occasions.  He also relayed that he and Defendant had given counterfeit currency to a woman who worked as a cashier at a Winn-Dixie store.  The woman took the counterfeit bills to work and "traded" them for legitimate currency in exchange for half the proceeds.  (Doc. 144 at 103–109.)

On cross-examination Whitaker also admitted passing bills at a McDonald's through a cashier he knew named Rebecca Turner.  He denied being called as a witness in her case, and when asked whether he had given a deposition, he said that Ms. Turner did not have a case and he had not been to anyone's court case.  Whitaker then admitted giving "a statement" although he denied giving conflicting statements in the deposition.  Whitaker maintained that his testimony that Defendant had dropped $10,000 in counterfeit bills in his lap was the truth, and he denied having been

---

[9] Defense counsel succeeded in keeping out any testimony about the nature of the purchase: illegal drugs.

previously convicted of crimes involving dishonesty. When pressed upon whether the charges for uttering a forged instrument were crimes of dishonesty Whitaker responded "If that's what you want to call it." Defense counsel asked Whitaker about an incident when he was running from the police and dropped a cigar box with a phony $50 bill in it, and Whitaker denied having been questioned or charged, reiterating that the only charges against him had come from the time when he and Defendant had passed off the counterfeit bills. Whitaker also admitted that he and Defendant previously had a falling out. (Doc. 144 at 110–113.)

At the close of Whitaker's testimony, defense counsel asked in open court whether Whitaker could be charged with perjury, referencing an investigative report. The court excused the jury, and counsel explained that she had a copy of a Secret Service investigation report describing the conduct Whitaker had just denied to the jury, dropping a cigar box containing a counterfeit $50 bill while fleeing from law enforcement. She reiterated her request that Whitaker be held accountable for his false statements. The Government's attorney said that it was not clear that there had been perjury or even an inconsistent statement. The court stated that if counsel wished to impeach the witness, the ball was in her court to call a witness who could testify about the true state of affairs about the cigar box. (Doc. 144 at 115–117.)

Even if Defendant is correct that Whitaker gave untruthful testimony on this tangential point, that is not something that counsel could have predicted. Counsel had the report in her possession and thus available to her to show the witness, but chose not to do so. Furthermore, whether Whitaker may or may not have possessed a cigar

box with a counterfeit $50 bill at some point independent of his interaction with
Defendant does not discredit the entirety of his testimony with respect to the actions he
and Defendant took together to pass counterfeit money.  Defendant does not identify
any other basis for impeachment of this, or any other Government witnesses.
Therefore, in light of the entirety of the circumstances, Defendant has not shown that if
counsel had requested, and been granted, a continuance on the Friday before trial, that
the outcome of the proceedings would have been different.

Defendant also contends that counsel was constitutionally ineffective for failing
to file a pretrial motion pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) to
request the Government to provide a written summary of its experts' opinions, the
bases and reason for those opinions, and the witnesses' qualifications.  Defendant
does not suggest how the outcome of the proceedings would have been different had
counsel made such a request.  The Government tendered two individuals as experts,
Sgt. Ronald Plenge of the Panama City Police Department and Special Agent Emily
Beyer with the United States Secret Service.  Sgt. Plenge testified as an expert in latent
examination of fingerprints.  He was questioned about his qualifications, experience,
training, and certificates after which the court ruled that he would be permitted to testify
as an expert in the field. (Doc. 144 at 53–55.).  Sgt. Plenge then testified about his
examination of relevant evidence in the case and how he had identified Defendant's
fingerprints.

Special Agent Beyer was questioned about her training and experience in the
identification of counterfeit currency, and was allowed to testify as an expert on that

subject without objection or questioning by the defense.  (Doc. 144 at 77.)  She then testified about her examination of the counterfeit currency at issue in this case and all of its characteristics that led to her conclusion that it was, in fact, counterfeit.

In sum, each witness's testimony was relatively routine within his or her respective area of expertise.  Counsel cross-examined each witness, and there is nothing in the record to suggest that the outcome of the trial would have been different had there been additional pre-trial disclosures with respect to the experts, their qualifications, or opinions.

In Ground 46 Defendant asserts that attorney Higgins was constitutionally ineffective because she failed to request that the Government disclose the "witnesses proffer for their testimony" and the letter that was given to witness Samantha Hardrick to go over before she testified. It appears that the letter to which Defendant refers is a letter from the Government that said basically that Mr. Hardrick's statements during her testimony would not be used against her and that if she wanted the Government to advise anyone that she had assisted in this case, it would do so.  (*See* doc. 144 at 92.) Defense counsel cross-examined Hardrick about her motivation for testifying, and Defendant has not shown that counsel was constitutionally ineffective in this respect. Furthermore, the letter that the Government purportedly sent to defense counsel before trial included a proffer of the testimony it expected to adduce from Whitaker and Hardrick.  Because counsel had advance notice of this, she was able to lodge a successful objection, and certain information, including the nature of the "business" between Whitaker and Defendant, as well as Hardrick's attempts to obtain cocaine from

Defendant, was successfully excluded at trial.  Defendant has not shown constitutional deficiency in counsel's conduct.

### Grounds 6 through 11– the Indictment

Defendant claims that his retained attorney, Ms. Higgins, was constitutionally ineffective for failing to make numerous objections to the indictment itself or the process via which it was procured.

In Ground Six, Defendant asserts that counsel should have moved to dismiss the indictment in light of the Government presenting the grand jury with evidence related to the drug counts during the proceedings to obtain the indictment on Count One.  To the extent Defendant's claim is read as arguing that counsel should have challenged the improper joinder of the charges, his claim is without merit.  There was abundant record evidence reflecting that Defendant used counterfeit currency as part of his drug trafficking business.  Therefore, joinder was proper in accordance with Federal Rule of Criminal Procedure 8(a).  Additionally, Defendant cannot show prejudice because there was no "spillover" effect.  Not only did the court grant the defense motion to sever the trial of the counterfeiting charge from the other charges, but the court ruled that there should be no reference at trial to Defendant's use of the counterfeit currency in conjunction with drug trafficking activities.  (Doc. 144 at 7.)

In Grounds 7 and 8, Defendant argues that attorney Higgins was constitutionally ineffective when she failed to object to the Government's presentation of controlled substance evidence to the grand jury before the laboratory analyses had been completed.  The Government has submitted the transcripts of the grand jury testimony

given by  Robert Duncan and Emily Beyer in support of both the original and the superseding indictment.  (Doc. 224, exs. 4–8.) Duncan testified about the results of the laboratory analysis during the Government's presentation to the grand jury for the second superseding indictment, although he admitted that he did not have all of the reports with him.  (Doc. 224-6 at 7, 8, 15.)

Regardless of whether laboratory analyses had been completed at the time of the initial indictment, there was no prejudice.  The laboratory results ultimately confirmed the identity of the tested substances. Furthermore, it is well established that "[a] guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant."  *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) (quoting *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir.1986) (quoting *United States v. Jackson*, 659 F.2d 73, 74 (5th Cir.1981)); *see also United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir.2003) ("Generally, a voluntary, unconditional guilty plea waives all non-jurisdictional defects in the proceedings.").  Counsel was not constitutionally ineffective for her failure to make a meritless objection.

In Grounds 9 and 10 Defendant contends that Ms. Higgins was constitutionally ineffective in that she failed to move to dismiss the indictment due to two allegedly perjured statements that Special Agent Emily Beyer made to the grand jury.  First, Agent Beyer allegedly testified that there was one bill of counterfeit currency on each piece of paper that the Government placed in evidence, when the evidence later showed that actually there was one bill on ten sheets of paper and no bills on the

remaining 15 sheets of paper.  Defendant's literal reading of Beyer's testimony is not the only possible interpretation.  Beyer was asked "How many bills would be on a particular sheet?" and she responded that "There was one bill per each sheet of paper." (Doc. 224-5 at 3.)  A reasonable interpretation of this response was that any particular sheet only had one bill on it.  Beyer's testimony was not perjurious, and an objection to this comment would not have provided a basis for dismissal of the indictment.

During Beyer's second round of testimony before the grand jury, she was asked whether there were approximately 30 uncut sheets of paper bearing a counterfeit bill, and she answered in the affirmative.  (Doc. 224-7 at 3–4.)  Beyer also testified that merchants had identified Defendant as someone who had attempted to pass counterfeit bills and that individuals in the drug business had also seen Defendant in possession of counterfeit money.  (*Id*. at 6.)  There is nothing in the record to support a suggestion that Beyer's testimony was intentionally perjurious.  Furthermore, there was no legal requirement that the indictment specify the quantity of counterfeit currency involved in Defendant's offense conduct.  Regardless of whether there were ten sheets or thirty sheets, Beyer's testimony was sufficient to support indictment.

Defendant's next complaint is that Beyer stated that the evidence in this case was submitted to the Panama City Police Department (PCPD) Laboratory for analysis, when in actuality, the PCPD does not have a lab and the evidence was submitted to the Florida Department of Law Enforcement (FDLE).  Beyer's mention of the Panama City Police Department was almost in passing.  (Doc. 224-5 at 4.)  Even if this was not

accurate, there is no basis to conclude that it was intentional perjury.[10]  Defendant does

not suggest how an error in the identification of the lab to which evidence was

submitted for fingerprint analysis would have been in any way relevant to the grand

jury's determination, much less prejudicial to him.  Again, counsel was not

constitutionally ineffective for failing to file a frivolous motion to dismiss the indictment

on this basis.

In Ground 11, Defendant contends that counsel was constitutionally ineffective

for failing to move to dismiss the indictment based on the Government's introduction of

hearsay testimony before the grand jury.  Defendant is correct that hearsay testimony

was presented to the grand jury that indicted him.  However, presentation of or reliance

on hearsay testimony does not require dismissal of the indictment upon which the

testimony is based.  *See* United States v. Waldon, 363 F.3d 1103, 1109 (11th Cir.

2004) (citing *United States v. Brown*, 872 F.2d 385, 387–88 (11th Cir. 1989)); *see also*

*Costello v. United States*, 350 U.S. 359 (1956) (defendant could be required to stand

trial and a conviction could be sustained even if only hearsay evidence was presented

to the grand jury which indicted him).  Counsel was not constitutionally ineffective for

her failure to move to dismiss the indictment on this basis.

### Ground 12, 13 – Failure to exclude Agent Beyer from courtroom during trial

Defendant asserts that trial counsel was constitutionally ineffective when she

failed to object to Agent Beyer being permitted to testify as an expert witness at trial

---

[10] The government states that it has been "unable to find mention of submission of
any exhibits to the Florida Department of Law Enforcement."  (Doc. 223 at 4.)

when Beyer was also part of the prosecution team.  In a similar vein, Defendant asserts that counsel should have moved for a mistrial due to the fact that Beyer was present in the courtroom during the trial and then testified as an expert witness for the Government.

There is no legal authority for either of Defendant's claims.  Federal Rule of Evidence 615 exempts a person whose presence is essential to a party's presentation of its claim or defense from the rule of exclusion.  A case agent in a criminal prosecution, such as Agent Beyer in this case, is such a person.  Furthermore, the fact that a case agent remains in the courtroom does not preclude the case agent from testifying as an expert witness, as appropriate.  *See, e.g., United States v. Hatfield*, 342 F. App'x 510, 512 (2009) (two IRS agents remained in the courtroom during trial, one of whom testified as an expert).  There is no basis for relief on this claim.

### Grounds 14, 15– failure to make appropriate motions in response to Beyer's testimony

Defendant asserts that counsel should have moved for a judgment of acquittal based on the conflict between Beyer's report, which stated that there were 30 un-cut sheets of paper, and the Government's presentation at trial of photos of 10 un-cut sheets of paper and 15 cut sheets of paper.  Any inconsistencies in Agent Beyer's testimony before the grand jury and her testimony at trial would have been an appropriate subject for impeachment, not grounds for a judgment of acquittal.

Defendant also claims that counsel was constitutionally ineffective for failing to move for a judgment of acquittal based on the fact that Agent Beyer testified that

Defendant did not have counterfeit money on his person at any time.  Defendant argues that in order to secure a conviction, the Government must prove that he had "kept" the counterfeit obligation in his possession.

Title 18 U.S.C. § 472 provides:

Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined under this title or imprisoned not more than 20 years, or both.

The statute does not require that Agent Beyer personally and directly observe Defendant with counterfeit currency.  As noted by the Eleventh Circuit on appeal, there was "ample evidence" that Defendant had knowingly possessed counterfeit currency with the intent to defraud, including his fingerprints on the discarded copy paper and scissors package that formed the basis for the Government's case and the testimony of Hardrick and Whitaker.  *Davis I*, 370 F. App's at 982.  There was no basis for counsel to make what would have been a frivolous motion for a judgment of acquittal, and she was not constitutionally ineffective for not doing so.

### *Grounds 16, 18– omission of statutory language*

Defendant contends that counsel was constitutionally ineffective because she failed to move to dismiss the indictment because the Government altered the indictment by omitting the element "keep in possession" when reading the statute to the grand jury.

Similarly, he asserts that counsel was constitutionally ineffective for failing to object to the district court constructively amending the indictment, when the district judge omitted the same phrase in reading the instructions to the jury.

The court in this case used Eleventh Circuit Pattern Instruction 15.1 to charge the jury about the elements of the alleged offense.  In accordance with these instructions, the Government must prove beyond a reasonable doubt that 1) Defendant possessed counterfeit Federal Reserve notes; 2) that Defendant knew at the time that the notes were counterfeit; and 3) that Defendant possessed the notes willfully and with intent to defraud.  (*See* doc. 45 at 12.)  Although the pattern jury instructions are generally considered "a valuable resource, reflecting the collective research of a panel of distinguished judges," they are not binding; Eleventh Circuit case law takes precedence. *United States v. Dohan*, 508 F.3d 989, 994 (11th Cir. 2007) (quoting *United States v. Polar*, 369 F.3d 1248, 1252-53 (11th Cir.2004); *United States v. Veltmann*, 6 F.3d 1483, 1492 (11th Cir.1993)).  Eleventh Circuit case law supports the wording of these pattern jury instructions.  *See United States v. Reddick*, 303 F. App'x 819 (11th Cir. 2008).  There is no separate requirement that a defendant keep currency in his possession, and taken literally, a defendant who merely intended to keep the counterfeit notes in his possession arguably would lack the required intent to defraud. Defendant's semantic quibble with the absence of the phrase "keeps in possession" in either the Government's presentation to the grand jury or in the court's instructions to the jury does not entitle him to relief.  Counsel had no legally viable objection to make.

### *Grounds 17, 55– Failure to object to untimely § 851 enhancement*

Defendant contends that sentencing counsel Jean Downing was constitutionally ineffective because she did not object to the Government's failure to strictly comply with the requirements of 21 U.S.C. § 851 in seeking an enhanced sentence.  Defendant contends that the Government's notice was deficient because it was not filed until one day after his trial on the counterfeit charge, despite the statutory requirement that the notice be filed "before trial."  In his memorandum, Defendant claims—in direct contravention to arguments made elsewhere in his submissions—that had he known he was subject to an enhanced sentence, he would have made a different choice about going to trial.  (*See* doc. 203 at 10–11.)  Defendant also asserts that appellate counsel was constitutionally ineffective for his failure to raise this issue.

The Government does not specifically address Defendant's claim that the notice of enhancement should have been filed before any trial on the indictment in this case. Instead, it takes the position that "obviously" the requirement in § 851(a)(1) that the notice be filed before trial refers to the trial or guilty plea on the offense to which the enhanced penalty would apply.  In any event, based on the guidelines calculations in the PSR, the applicable guidelines range was 120 to 150 months, irrespective of the enhancement.  (*See* doc. 43; PSR ¶¶ 109–113.)  Because the notice had no impact on Defendant's ultimate sentence, Defendant was not prejudiced in any manner by the timing of its filing, and neither trial nor appellate counsel were constitutionally ineffective for their failure to challenge the validity of the § 851 notice.

### Grounds 21, 25, and 31–Motion to withdraw guilty pleas

Defendant maintains that both Susan James and Jean Marie Downing were constitutionally ineffective for failing to move to withdraw his guilty plea, which he claims was negotiated in violation of his constitutional right to counsel at all critical stages of the proceedings.  He also asserts that Ms. James should have moved to withdraw the plea because two different drug amounts had been presented to Defendant during the plea negotiation process,.

As discussed above, Mr. Kypreos represented Defendant at the change of plea proceeding due to Defendant's eleventh hour plea and Ms. James' unavailability due to being in trial in Georgia.  Defendant told the court, under oath, that he had discussed the plea agreement and the sentencing guidelines with his attorneys.  (Doc. 150 at 10–11.)  He said that he understood if his sentence was different from what counsel had predicted, he would not be able to retract his plea.  (*Id*. at 11–12.)  In referring to the written statement of facts, the court noted that it had been informed that there were two passages in the plea agreement with which Defendant did not agree.  Upon further questioning, Defendant conceded that the facts with which he disagreed pertained only to Counts One and Two, and he was not pleading guilty to those counts.  (*Id*. at 12–14.)  Defendant stated that he had been provided with sufficient time to speak with his lawyer about the plea agreement, and that his attorneys had answered all his questions, and that he was satisfied with their advice.  (*Id*. at 15–16.)  Mr. Kypreos summarized his contact with Defendant, as well as his understanding of Defendant's contact with Ms. James, which Defendant did not contradict.  (*Id*. at 17.)  Defendant also acknowledged

his understanding that no substantial assistance motion would be filed.  (*Id*. at 18.)
Defendant was given ample opportunity to address the court to raise any issues or
concerns that he had.  Other than those stated, there were none.

A defendant may withdraw his guilty plea only upon a showing of a "fair and just
reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  Defendant now
claims that he wanted to withdraw his plea agreement because he objected to certain
portions of the statement of facts (Doc. 203 at 12), he was deprived of his sixth
amendment right to counsel during the plea process (*id*.); the agreement contained
different drug amounts than had been explained to him (*id*. at 13; Doc. 207 at 5); the
agreement was signed by Spyro Kypreos in lieu of Ms. James (Doc. 203 at 13); and he
was misadvised of the terms of the plea. (Doc. 207 at 5.)

With respect to Ms. James, Defendant asserts that he requested several times
that she move to withdraw his plea.  Appended to his first motion to supplement is a
copy of a September 11, 2008 letter from Ms. James to Defendant.  (Doc. 207 at 44.)
In this letter, Ms. James acknowledged that Defendant had expressed a desire to
withdraw his guilty plea, but advised him that such a course was unlikely to be
successful, and could have serious negative consequences with respect to his attempts
at cooperation.  She also noted that it was Defendant who reached out to agents at the
"final hour" before trial, and that she had been preparing for trial when she learned of
his efforts.  Finally, counsel advised Defendant that it was extremely dangerous to even
try to withdraw his plea, and that if he insisted on doing so, against counsel's advice, it

would be at his own peril.  Defendant testified at sentencing that counsel's advice was to just continue to cooperate, which he did.  (Doc. 147 at 23.)

Although Defendant did not file a motion to withdraw his guilty plea in contravention of Ms. James' advice, shortly thereafter, on or about October 7, 2008, he hired attorney Jean Marie Downing to do so.  (*See* doc. 207 at 46–48.)  Ms. Downing wrote a letter to Ms. James on October 10, 2008 expressing her intent to move to withdraw Defendant's guilty plea.  (Doc. 203 at 23.)  However, no such motion was filed.

According to Defendant's testimony at sentencing, he and Ms. Downing discussed the fact that attempting to withdraw his plea could affect Defendant from receiving a substantial assistance motion, and that it was his intent in entering the plea to cooperate with the Government and thus receive either a 5K1 or a Rule 35.  (Doc. 147 at 23.)  It is clear from Defendant's own testimony, then, that he discussed with more than one attorney the pro's and con's of moving to withdraw his guilty plea, and after doing so chose to continue his attempts at cooperation.  The fact that his attempts at cooperation did not rise to the level of substantial assistance[11] and he is now unhappy with his sentence is an insufficient basis to move to withdraw a plea.  *See, e.g., United States v. Jones*, 480 F. App'x 555 (11th Cir. 2012); *United States v. Kirksey*, 283 F. App'x 714 (11th Cir. 2008).  As Defendant was also advised by the court in another hearing, a lawyer has an obligation not to file something that they know

---

[11]The fact that he did not receive a substantial assistance motion was likely unsurprising to counsel in light of Ms. James' admonishment to Defendant that the Government "does not like you and thinks you are a liar."  (Doc. 207 at 44.)

has no basis.  (Doc. 148 at 13.)  Under the facts of this case, Defendant has failed to establish that either attorney was constitutionally ineffective for failing to file a motion to withdraw his guilty plea when there was no record support for doing so.

### Ground 22–Failure to file motion to suppress

Defendant contends that trial counsel Susan James was constitutionally ineffective because she did not file a motion to suppress Defendant's uncounseled December 18, 2005 statement to DEA Agent Robert Duncan and Adam Buff, which statement was purportedly made after Defendant had repeatedly requested counsel and while Defendant was under the influence of alcohol.

When counsel's alleged ineffectiveness involves a failure to competently litigate a Fourth Amendment claim, to demonstrate actual prejudice, the defendant must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 2582–83, 91 L. Ed. 2d 305 (1986); *Zakrzewski v. McDonough,* 455 F.3d 1254, 1260 (11th Cir. 2006).  If counsel has reason to believe that a motion to suppress would have been unsuccessful, a decision to forgo filing such a motion is not constitutionally unreasonable.  *See, e.g.*,  *Zakrzewski*, 455 F.3d at 1260–61; *Brown v. United States*, 219 F. App'x 917, 919 (11th Cir. 2007); *Chandler v. United States*, Case No. 1:12-CV-8016-KOB, 2014 WL 2807571 (N.D. Ala. June 20, 2014) (citing cases).  Defendant cannot meet this burden.

The Government states in relevant part in its response to this claim that counsel for the Government "has consulted with (now-retired) DEA TFO Duncan. Mr. Duncan advises that it was standard practice for persons arrested by the Bay County Sheriff's Office to be given their Miranda warnings and that this would have been done in Defendant's case." (Doc. 223 at 19–20.) The Government concedes that "it is not known whether a written Miranda waiver exists" while noting that Mr. Duncan denied that defendant requested to speak to an attorney. (*Id.* at 20.) The Government's summary of Mr. Duncan's recollection is not persuasive. Of greater persuasive value is the fact that nowhere in Defendant's submissions does he say that Ms. James knew of the facts that Defendant now claims, that law enforcement denied Defendant his right to counsel after his requests. Without this information, Ms. James would have had no reason to file a motion to suppress. Counsel is not charged with clairvoyance. *See United States v. Fields,* 565 F.3d 290, 295 (5th Cir. 2009). Furthermore, Defendant's efforts at cooperation with law enforcement would not lead a disinterested observer to believe that he had attempted to invoked his right to counsel, but rather that he was voluntarily cooperating in hopes of reducing his own criminal exposure. Finally, Defendant's assertion that he was not given his Miranda Rights "at no time" strains credulity.

Although the primary thrust of Defendant's argument appears to be that the statements were uncounseled, Defendant also notes that he was "under the influence of alcohol" at the time. In support of this statement he submits a police report which reflects a "strong odor of alcohol." (Doc. 207 at 45). The Government reports that

Duncan, who spoke with Defendant over a period of time, observed that Defendant was coherent and appeared not to have any trouble comprehending what he was doing. (Doc. 223 at 20.)  Furthermore, the presence of the odor of alcohol would not alone be sufficient to show that Defendant was too intoxicated to voluntarily waive his rights. *See Hubbard v. Haley*, 317 F.3d 1245, 1253–54 (11th Cir.2003) (district court did not clearly err in concluding evidence was insufficient to show that petitioner was either too drunk or too sick from alcohol withdrawal to voluntarily make statement to police; multiple witnesses testified that while Hubbard did have an odor of alcohol about him, he did not appear to be intoxicated or suffering from delirium tremens at the time he spoke to officers at police station); *see also, e.g.*, *United States v. Figueroa*, 419 F. App'x 973, 978, 2011 WL 1168821, at *4 (11th Cir.2011) (district court did not clearly err in finding that defendant's consent to the search of his apartment by Drug Enforcement Administration (DEA) agents was voluntary; although defendant testified he had used heroin the night before the search, and was still high on heroin when he consented to the search, two agents testified that when defendant gave his consent to search, he was coherent and appeared to understand what was happening, and one of the agents also testified that no coercion was involved in obtaining defendant's consent, that defendant was aware of his rights, and that, after giving consent, defendant denied that any incriminating evidence would be found in his apartment); *United States v. Smith*, 322 F. App'x 876, 878–79, 2009 WL 961603, at *1 (11th Cir.2009) (affirming trial court's denial of Smith's motion to suppress statements to law enforcement where Smith was given Miranda warnings upon his arrest and again at the jail before

questioning began; while Smith did not execute a formal waiver, he voluntarily spoke to officers and made consistent statements, both at the scene and at the jail; although Smith had been intoxicated, at least three hours elapsed between the car accident and the start of the jail interview; and at the interview, Smith noted that officers had already read his rights to him, appropriately responded to questions, and even acknowledged that he was sober during the questioning; based on the totality of these circumstances, the district court made no error in determining that the passage of time and Smith's demeanor during questioning rendered his waiver of Miranda rights knowing and voluntary).  Thus, because Defendant has not established a motion to suppress would have been successful, Defendant is not entitled to relief.

### Ground 23–Misadvice concerning benefit of plea

Defendant contends that Ms. James misadvised him that if he pleaded guilty he would receive a substantial assistance motion based on his cooperation with the Government and he would receive credit for acceptance of responsibility.  He also asserts that she advised him that he would lose both reductions if he attempted to withdraw his guilty plea.

Defendant's assertions that there were promises other than those contained in the plea agreement is contradicted by his sworn statements at the plea proceeding. (See doc. 150 at 15, 18.)  A defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent collateral proceedings.  *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977); *Winthrop-Redin v. United States*, 767 F.3d 1210 (11th Cir. 2014) (citing

*Blackledge*).   Solemn declarations made under oath in open court carry a strong

presumption of verity.  *Blackledge*, 431 U.S. at 73–74; *Connolly v. United States*, 568 F.

App'x 770, 771 (11th Cir. 2014) (citing *Blackledge*); *Garces v. U.S. Att'y Gen.*, 611 F.3d

1337, 1349 (11th Cir. 2010) (citing *Blackledge*).  They are presumptively trustworthy

and are considered conclusive absent compelling evidence showing otherwise; the

subsequent presentation of conclusory and contradictory allegations does not suffice.

*Blackledge,* 431 U.S. at 73–74; *Winthrop-Redin,* 767 F.3d at 1216.  In fact, such

allegations are subject to summary dismissal.  *Winthrop-Redin,* 767 F.3d at 1216 (citing

*Blackledge*, 431 U.S. at 74).  A defendant "bears a heavy burden to show his

statements [under oath] were false."  *United States v. Rogers*, 848 F.2d 166, 168 (11th

Cir. 1988); *United States v. Green*, 275 F. App'x 941 (11th Cir. 2008); *United States v.

Cardenas*, 230 F. App'x. 933 (11th Cir. 2007).  Regardless of what Defendant believes

Ms. James may have told him, he was fully aware at the time of the plea proceeding

that there was no guarantee that the Government would file a substantial assistance

motion, as Mr. Kypreos specifically so stated on the record.  (*Id*. at 18.).  And,

Defendant was unequivocally aware that there was no promise of a particular sentence.

(*Id.*)

Defendant's suggestion that counsel was constitutionally ineffective for advising

him that he would lose both the substantial assistance and the acceptance of

responsibility reduction if he attempted to withdraw his guilty plea is misguided.

Counsel's advice, that Defendant *could* lose these reductions, was well-founded. There

is no basis for relief.

### Grounds 24, 58–failure to interview Margaret Valitines

Defendant asserts that Ms. James was constitutionally ineffective because she did not investigate the case and interview eye witnesses.  Defendant specifically identifies Margaret Valitines,[12] and claims that he would have gone to trial had counsel contacted this witness and had her testify at his trial.  Defendant's conclusory assertions do not entitle him to relief.  He offers no suggestion as to the nature of the testimony that Ms. Valitines would have offered, or how the testimony of a single individual could have overcome all of the other evidence against him.  He has not shown that he is entitled to relief.

### Grounds 26, 38–Judgment of Acquittal

Defendant contends that Ms. Higgins was constitutionally ineffective for failing to move for a judgment of acquittal on one of two grounds.  First, he asserts that a judgment of acquittal was warranted based on "tainted" evidence, in that the scissors that were reportedly discovered with the counterfeit money were not turned over to the Panama City Police Department.  Defendant's fingerprints were not found on the scissors, although his prints were recovered from the scissors package and sheets of paper discovered that same day.  It would not be unusual not to find latent fingerprints on a hard item such as scissors, and the absence of Defendant's fingerprints on the scissors was not exculpatory.  Thus, although the Government has a duty to provide

---

[12] The witness is alternately identified as Valitine and Valitines.  (*See* doc. 207 at 6, 7.)  Defendant references an affidavit, from this witness that is purportedly Exhibit E to the motion to supplement.  (*See, id.*)  Exhibit E, however, is the Bay County Sheriff's Office Offense Report. There is no affidavit from Ms. Valitine, or anyone else, included as part of any of the exhibits to this submission.

Defendant with exculpatory evidence in its possession, the apparent loss of the scissors did not prejudice Defendant and would not alone have supported a judgment of acquittal.  Cf. *Brady v. Maryland*, 373 U.S. 83 (1963); *California v. Trombetta*, 467 U.S. 479 (1984).  Counsel was not constitutionally ineffective for her failure to so move on this ground.

Second Defendant contends that counsel should have moved for a judgment of acquittal on the ground that there was insufficient evidence to prove that Defendant had possessed counterfeit bills.  The Eleventh Circuit upheld Defendant's challenge to the sufficiency of the evidence on appeal, and identified the evidence presented against him at trial.  *Davis I*, 370 F. App'x at 981–982. This evidence included the fact that Defendant's fingerprints were on discarded copy paper and a retail package that had contained scissors which was found beside counterfeit money, and the testimony of two individuals who had either received counterfeit money from Defendant, helped him print counterfeit money, or had been enlisted by him to pass it.  *Id.* at 982.  There is nothing in the record to suggest that the district court's analysis of the evidence would have been any different.  Thus, counsel was not constitutionally deficient for her failure to make this argument.

### Grounds 27, 28–Failure to object to sentencing error

Defendant says that although the PSR attributed a base offense level of only 9 to his conviction on Count One, the court erred and sentenced him to a term of 150 months imprisonment on this count.  Defendant contends that both Ms. Downing and appellate counsel Noel Lawrence were ineffective for failing to object to or challenge

this error.   Defendant's assertion that the trial court committed error is fueled by a

misunderstanding of the Sentencing Guidelines.  Section 5G1.2(b) provides that for

sentencing on multiple counts of conviction, the court shall determine the total

punishment and shall impose that total punishment on each count, except to the extent

otherwise required by law.  Therefore, there was no error, and neither of Defendant's

attorneys were constitutionally ineffective for failing to raise this meritless issue.

### Ground 30–Prior convictions

Defendant claims that counsel Jean Downing was constitutionally ineffective

because she did not object to the Government using unreliable police reports and

complaints to establish Defendant's prior convictions.  Defendant admitted his prior

convictions at sentencing, under oath.  *(See* Doc. 147 at 51–53.)  Thus, no additional

proof was required, and counsel was not constitutionally ineffective for failing to make a

frivolous objection.

### Ground 32–Misadvice about the implications of disagreeing with the Statement of Facts

Defendant contends that Spiro Kypreos provided ineffective assistance of

counsel for "misadvising" him at the plea hearing.  Specifically he asserts that counsel

informed him that the facts contained in the Statement of Facts (Doc. 113) that

Defendant denied had no effect on the plea, when actually these facts were used as

relevant conduct to increase his base offense level.

The record of the plea proceeding clearly reflects Defendant's disagreement with

certain facts contained within the Statement of Facts.  *(See* Doc. 150 at 13–14.)  The

record is somewhat confusing as both counsel and the court appeared to refer to

"Count 1 and 2" when instead they intended to refer to "paragraphs 1 and 2 of the

statement of facts.  (*See id.* at 13).  However, Defendant admitted that he agreed with

the facts as stated in paragraphs three through seven of the Statement of Facts, and

agrred that the Government had facts and evidence it could present to support a jury

finding of guilt on Counts Five, Six and Seven.  (*Id.* at 14–15.)   The statement to which

Defendant refers appears to be counsel's statement that paragraph eight of the

statement of facts "would not affect the plea to the underlying counts."  (*Id.* at 14.)

From the context in which this statement was made, it is clear that counsel referred to

the Government's ability to prove the required elements of the charges to which

Defendant was pleading guilty.  The question of Defendant's potential sentencing

exposure was addressed separately, and in that regard, Defendant acknowledged that

there were no promises or guarantees about the sentence he would receive.  (*Id.* at

10–11.)  Therefore, counsel was not constitutionally deficient as suggested by

Defendant.

### *Ground 33, 63, 64–Failure to object to district court's acceptance of plea*

Defendant contends that Ms. Downing was constitutionally ineffective for failing

to object to the district court accepting the plea agreement over Defendant's objection.

Defendant claims that portions of the plea agreement were explained to him differently

by DEA agent Duncan from what was represented in court.  He further contends that

the district court committed a "miscarriage of justice" when it accepted his plea despite

the fact that Defendant did not admit to the factual bases for the offense conduct, and

that counsel failed to object to this miscarriage of justice, which was the court accepting Defendant's plea under these circumstances.

As noted above, at the plea proceeding, Mr. Kypreos explained the portions of the statement of facts with which Defendant disagreed.  (Doc. 150 at 13–19.)  The record is somewhat confusing in that both counsel and the court appear to refer at least once to "Counts" rather than "paragraphs" of the statement of facts.  (*Id*. at 13, 14.)  However, Defendant clearly admitted that what is written in the agreement with respect to Counts 5, 6, and 7 is true.  (*Id*. at 13, 14, 15.)   Thus, there was no miscarriage of justice and no basis for counsel to make the objections that Defendant now proposes.  Accordingly, Defendant has not shown that he is entitled to relief.

### *Ground 37–Frivolous objection to role adjustment*

Defendant asserts that Ms. Downing provided ineffective assistance of counsel in that she made a "frivolous" objection as a result of her failure to investigate his case.  The objection in question was counsel's objection to the failure to award a two level reduction to Defendant due to his minor role in the conspiracy.  Defendant asserts that this objection was frivolous because he was neither charged with nor convicted of conspiracy.  Although the objection was not well-taken for the reason Defendnat suggests, Defendant has not established that he was prejudiced by what the Government characterizes as counsel's "perhaps over-zealous" objection.  Thus, Defendant is not entitled to relief.

### *Ground 39–Failure to prepare witness*

Defendant asserts that trial counsel Tanya Higgins was constitutionally ineffective with respect to her preparation of defense witness Katie Harris, Defendant's mother.  He claims that counsel failed to investigate or interview Harris, failed to prepare a defense based on her testimony and failed to list Ms. Harris as a witness. Defendant's mother testified very briefly at trial.  (Doc. 144 at 122–124.)

Defendant does not explain what additional testimony counsel could have gleaned from Ms. Harris with further preparation or what defense such testimony might have supported.  The brief testimony of Defendant's mother was aimed at impeaching Government witness Hardrick, by establishing that Hardrick was biased against Defendant due to their past romantic unstable relationship.  Ms. Harris' testimony on cross-examination revealed that she was unaware of elements of Defendant's life including  where Defendant was living and the state in which Defendant worked.  As noted by the Government, counsel was not constitutionally required to coach the witness to give answers beyond her own knowledge.

### Ground 40–Failure to object to Hardrick testimony

Defendant asserts that Ms. Higgins was constitutionally ineffective because she failed to move for a judgment of acquittal or mistrial based on Samantha Hardrick's testimony about events that occurred outside the time period of the indictment. Such a motion would have failed as there was no legal basis for counsel to object to the testimony in question.

The Government provided written notice about its intent to introduce this evidence.  (Doc. 40 at 2–4.)   Federal Rule of Evidence 404(b)(2) permits the introduction of testimony about crimes or other acts to prove intent, knowledge, absence of mistake or lack of accident.  Ms. Hardrick's testimony about other instances in which Defendant was knowingly involved with counterfeit money was relevant to rebut the suggestion that there was an innocent explanation for the discovery of Defendant's fingerprints on the evidence forming the basis for the counterfeit charges.  Thus, it clearly fell within the parameters of this Rule.  *See United States v. Edouard*, 485 F.3d 1324, 1344–46 (11th Cir. 2007); *United States v. King*, 174 F. App'x 467 (11th Cir. 2006); *United States v. Calderon*, 127 F.3d 1314 (11th Cir. 1997).  Accordingly, Defendant is not entitled to relief.

### Ground 41–Consideration of state court convictions

Defendant contends that sentencing counsel Ms. Downing was constitutionally ineffective when she failed to object to the use of Defendant's state court convictions as criminal history conduct under § 4A1.2(a)(1) of the guidelines.  Defendant asserts that because the conduct underlying these convictions was considered "relevant conduct" to the instant offense, it should not have been so scored in accordance with this guideline provision.  Although Defendant does not specify to which conviction he refers, the only conviction where the underlying offense conduct could arguably have been considered as "part of the instant offense" (*see* § 4A1.2(a)(1)) was contained within paragraph 78 of the PSR.

In August of 2006, after pleading no contest to uttering counterfeit bills in Bay County Florida, Defendant was sentenced to 20 months imprisonment.  The probation officer assessed three criminal history points for this conviction.  Defendant had a lengthy criminal history with a total of 40 criminal history points.  (PSR ¶ 81).  Even if the inclusion of these three points was erroneous, Defendant cannot show that he was prejudiced by counsel's failure to object.   Without these three points, Defendant still would have had a total of 37 criminal history points, which was well in excess of the thirteen points necessary to achieve the highest Criminal History Category of VI.

### Ground 42–Failure to object to Plenge testifying as an expert

Defendant claims that Ms. Higgins was constitutionally ineffective when she failed to object to Sgt. Plenge testifying as an expert witness at his counterfeiting trial. He specifically objects to the fact that Sgt. Plenge did not present any certified documents supporting his experience in finger printing.

The Government questioned Sgt. Plenge about his background and experience, which revealed that the witness had attended latent examination school through the FDLE, that he had subsequently attended a week long advanced course also through the FDLE and that he had attended a palm examination reading class taught by a retired law enforcement officer.  (Doc. 144 at 53–54.)   Sgt. Plenge testified that he had examined literally thousands of cases since 1991, some involving more than one set of prints, and that he had successfully identified hundreds of prints.  Sgt. Plenge stated that he had previously testified as an expert in both state and federal courts on the subject of fingerprint examination.

After the Government offered Plenge as an expert on the subject of fingerprint examination, Defense counsel followed up by asking whether the witness had taken an exam in each of his courses, to which he responded in the affirmative.  Sgt. Plenge noted that he had not brought any certificates or other documentation with him, but confirmed that he received certificates for the FDLE classes he had taken.  (Doc. 144 at 55–56.)  Based on the evidence presented, there was no basis for counsel to object to Plenge testifying as an expert witness, and she was not constitutionally ineffective for her failure to make a frivolous objection.

### Ground 43–Failure to challenge evidentiary ruling on appeal

Defendant asserts that appellate counsel Noel Lawrence was constitutionally ineffective for failing to challenge on appeal the district court's ruling on the admission of hearsay testimony during Defendant's trial.

During the re-direct examination of Agent Beyer, the Government asked her about statements allegedly made by Samantha Hardrick on October 6, 2005.  (Doc. 144 at 88).  Agent Beyer confirmed that Hardrick had admitted that she had knowingly passed a counterfeit bill she obtained from her stepfather.  The Government asked whether Hardrick had told Beyer from whom he had received the bill.  Defense counsel lodged a hearsay objection, which the court overruled, and which Defendant now challenges.  Beyer then responded that Hardrick said that her father had obtained the bill from Defendant Davis, who had also manufactured the bill.  (*Id.* at 89.)

This Government's questioning was in direct response to information elicited on cross examination about the origin of the same bill.  (*Id.* at 83.)  Beyer testified on cross

examination that Hardrick had tried to pass a counterfeit bill on October 5, by herself.
Defense counsel asked whether Hardrick had told Beyer that she had received the bill
from her stepfather, which Beyer confirmed.  The questioning then moved on to another
area, potentially leaving the impression that the counterfeit bill in question had no
relationship to Defendant Davis.  Although clearly qualifying as hearsay, Beyer's
testimony was admissible under the residual hearsay exception, as in light of the
potential misperception created by the information elicited on cross-examination, and
the admission of the testimony "serve[d] the purpose of [the Federal Rules of Evidence]
and the interests of justice.  Fed.R.Evid. 807; *see also* Fed.R.Evid. 102 (rules aimed at
"ascertaining the truth and securing a just determination").  Because there was no error
in the trial court's ruling, appellate counsel was not constitutionally ineffective for failing
to raise this issue on appeal.

### *Grounds 44, 54–failure to cross examine (non-testifying) witnesses*

Defendant asserts that Ms. Higgins was constitutionally ineffective for failing to
request permission to cross-examine Robert Hamilton, whom Defendant characterizes
as a Government witness, resulting in a violation of his right to confront witnesses.
Defendant is mistaken. Hamilton did not testify.  Rather, he was mentioned only briefly
in the testimony of Beyer and Hardrick on cross-examination.  Because the
Government did not offer any of Hamilton's statements, directly or indirectly, into
evidence in this case,  he was not a witness whom Defendant had the right to confront.

Defendant makes a similar claim with respect to Government Agent Rainelli,
who, Defendant asserts, actually conducted the investigation on the case.  Agent Beyer

mentioned Agent Rainelli during her testimony to explain that Rainelli was working on a separate but related case.  (Doc. 144 at 83–85.)  Neither Agent Rainelli's testimony nor any of his written reports were offered into evidence in this case and, thus, Defendant was not entitled to cross-examine him.

Ms. Higgins failure to pursue cross-examination of individuals who did not testify was not constitutionally ineffective in any respect, and Defendant is not entitled to relief.

### Ground 45–Failure to object to leading questions

Defendant claims that counsel was constitutionally ineffective because Ms. Higgins failed to timely object to the Government asking leading questions of its witness Samantha Hardrick at trial in reference to Defendant "giving her something."  Prior to trial, the court granted Defendant's motion to exclude mention of his drug trafficking activities, to avoid potential prejudice.  (Doc. 144 at 2–7.)  The Government's leading question of Ms. Hardrick, to which defense counsel promptly objected, was aimed at ensuring that the witness did not inadvertently blurt out information about Defendant's drug trafficking activities in violation of the court's order.  (*Id*. at 93–94.)  Defendant has not suggested any valid objection that counsel should have made to Hardrick's testimony that would have altered the outcome of the proceedings.  He is not entitled to relief.

### Ground 47–Downing's failure to move for a new trial

Defendant contends that his sentencing counsel Jean Marie Downing was constitutionally ineffective when she failed to move for a new trial on Count One where government witness Samantha Hardrick "recanted" her testimony after trial.  According

to Defendant, DEA Agent Robert Duncan and prosecutor AUSA Michael Simpson threatened Hardrick and offered her money for her testimony, and even showed up at her house and threatened to put her in jail if she did not testify to "events that was not true."  (Doc. 202 at 16.)

Defendant's assertions appear to be based on a letter dated December 15, 2008 signed by Samantha Hardrick.  (Doc. 207 at 50.)  This letter reflects that it was signed before a notary public, but does not specifically state that it was sworn under penalty of perjury.  In the letter Ms. Hardrick states that she was threatened that if she did not testify against Defendant she would be charged and/or her probation would be violated, that she would get paid for her testimony, and that the Government would help get her out of her "trouble" in state court.  She also claims that Duncan had said that he wanted Hardrick to testify against Defendant with respect to his drug charges, but Hardrick told them she knew nothing about that.

First, there is some question as to whether Ms. Downing knew of the letter.  Ms. Downing had been hired only to file pre-sentencing motions and to represent Defendant at sentencing, and she filed a motion to withdraw on December 18, 2008.  (Doc. 125.) She could not have been expected to file a motion based on information of which she was unaware.

Second, even if this letter had come to the attention of Ms. Downing, it would not have formed the basis for a successful motion for a new trial.  Ms. Hardrick's statement that the Government forced her to say things that were "not true" is vague and

unsupported.  The majority of her other statements appear based in the truth but reflect a seeming relative lack of legal sophistication.[13]

In the Government's response, it explains that Hardrick was told that she would suffer consequences, including possible violation of her probation, if she did not obey her subpoena and appear in court.  The Government also told Hardrick that her cooperation would be made known to authorities in her case, thus helping her with her "trouble" in state court, and she received a letter to this effect before testifying.  Hardrick herself also admitted this in her testimony before the jury.  (Doc. 144 at 92.)  The same letter included an admonition to tell the truth, (*see id.* at 131),[14] contradicting her assertion that the Government requested that she lie.  Furthermore, despite the fact that Hardrick was allegedly threatened in order to procure her testimony about drugs, she was not called to testify about any drug activity.  And finally, to the extent the standard payment of witness fees and per diem can be construed as "payment for" testimony, there was no impropriety as Hardrick was entitled to receive same.

In sum, if Ms. Downing even knew of Hardrick's letter, counsel was not constitutionally ineffective for failing to file what would have been a meritless motion for a new trial based on this letter.  Defendant is not entitled to relief.

---

[13] Hardrick was twenty-two at the time of Defendant's trial.  (Doc. 144 at 91.)

[14] This citation is to the Government's summary of the contents of the letter in its closing argument.  Although the Government indicated that the letter remained in the possession of the clerk of court at the time it filed its response in March of 2012, the undersigned has not personally confirmed the contents of the letter.

### Grounds 48 and 49–Tyrone Whitaker

Defendant contends that trial counsel was constitutionally ineffective for failing to properly impeach Tyrone Whitaker about a collateral matter at trial.

On cross-examination, Whitaker was asked whether he was called as a witness in a case involving a cashier at McDonald's to whom he had passed some counterfeit bills. Whitaker responded that he had not. When counsel asked whether Whitaker had given a deposition, he responded "She didn't have no case. I ain't been to nobody's court case." The following exchange took place:

Q: Did you give a deposition in that case?

A: Yes, ma'am. I think I did give a statement.

Q: And in fact you provided conflicting statements in that – in that deposition, didn't you?

A: No, ma'am.

Q: Well, was – was her case dropped?

A: I don't know.

(Doc. 144 at 111.)

In Defendant's reply, he explains that counsel should have called Rebecca Turner, whom he describes as a co-defendant in a state court case involving Whitaker. (*See* doc. 230 at 11.) According to Defendant, Turner would have testified that charges against her were dropped based on Whitaker's perjured testimony during a deposition in Turner's case. Testimony by Turner about her belief with respect to the reasons the charges against her were dropped would not have been admissible in this case for a

variety of reasons, including that anything she was told would have been hearsay.

Furthermore, any documentary evidence about Whitaker's alleged untruthfulness with

respect to Turner's case or any other matter would have been inadmissible under

Federal Rule of Evidence 608(b), which proscribes the admission of extrinsic evidence

presented to prove a specific instance of the witness's allegedly untruthful conduct.  It

also would not have advanced the purposes of the Federal Rules of Evidence, *i.e.* the

elimination of unjustifiable expense.  There was already abundant impeachment

evidence in the record.  As mentioned earlier, Whitaker admitted to the jury that he was

in the custody of the Florida Department of Corrections, that he had at least five

cocaine charges, and that he had been charged with fleeing and eluding, grand theft

and six counts of uttering forged bills.  (Doc. 144 at 103–104.)  Accordingly, Counsel

was not constitutionally ineffective for not calling Rebecca Turner as an impeachment

witness.

Defendant also contends that appellate counsel Noel Lawrence was

constitutionally ineffective because he should have challenged on appeal the district

court's evidentiary ruling on counsel's objection to Whitaker's reference to a trip to

Alabama.  The Government was allowed to ask a leading question at that point, over

defense objection, again in order to avoid references to drug trafficking, as ordered by

the court prior to trial.  (Doc. 144 at 105–106; 2–7.)   There was no error and no viable

issue for counsel to have raised on appeal.  Defendant is not entitled to relief.

***Ground 50–Failure to object to sentencing error***

Defendant contends that counsel should have objected to the district court's failure to make a sentencing adjustment pursuant to §§ 5G1.3(b) and 5K2.23. He asserts that because his drug dealing history was taken into account to increase his base offense level he is entitled to a sentencing adjustment. He also notes that he has (unsuccessfully) requested credit via the BOP administrative remedy process for time served on allegedly related state charges. (Doc. 207 at 13, 52–56.)

Neither § 5G1.3 nor § 5K2.23 of the Sentencing Guidelines are applicable to the facts of Defendant's case. Section 5G1.3(b) provides that if there is an undischarged term of imprisonment that results from another offense that is relevant conduct to the instant offense of conviction, the court shall adjust a defendant's sentence for any period of imprisonment already served on the undischarged term of imprisonment, upon determining that credit will not be awarded by the BOP. Section 5K2.23 is a policy statement concerning discharged terms of imprisonment. Defendant's PSR lists two prior drug convictions, from 1997 and 2000 respectively, both of which occurred in Dothan Alabama. (PSR ¶¶ 59, 70.)   Neither of these cases involve conduct "related to" the conduct charged in this case:  possession of controlled substances on three specific dates certain, at least seven years later in a different state. (Doc. 25.)

Defendant was held accountable for drug dealing activities dating back to 2005. However, this conduct was part of neither an undischarged term of imprisonment nor an anticipated state term of imprisonment. Therefore, section 5G1.3 did not direct a sentencing adjustment as a result of the court's consideration of these sales.

Furthermore, Defendant's suggestion that the fact that he had been in and out of the drug business his entire life" *Davis I*, 370 F. App'x at 981, proves the relatedness of the prior conduct is unavailing.  Counsel was not constitutionally ineffective for her failure to make the objection Defendant now suggests.

### Ground 51–failure to move to continue suppression hearing

Defendant asserts that Susan James was constitutionally ineffective for failing to file a motion to continue the August 6, 2008 suppression hearing, in light of the fact that she had not filed her notice of appearance until July 31, 2008.  The suppression hearing was scheduled to occur a mere twelve days before Defendant's trial date, and postponing the hearing in great likelihood would have necessitated postponing the scheduled trial.  Therefore, there is no guarantee that if counsel had filed such a motion that it would have been granted.  More significantly, Defendant offers nothing to suggest how postponing the hearing would have produced a different result.  Therefore, having presented only conclusory allegations, he cannot establish that counsel's failure to move to continue the hearing was constitutionally deficient.

### Ground 56–Failure to object to consideration of Defendant's assistance

Defendant asserts that Jean Marie Downing was constitutionally ineffective at sentencing when she failed to properly object to the district court's failure to take Defendant's attempts at cooperation into account in sentencing him.  Defendant asserts that the court should have taken his "substantial assistance" into account and departed to the bottom of the applicable guidelines range despite the fact that no § 5K1.1 motion was filed.

Ms. Downing was a vigorous advocate in her client's behalf.  She detailed her client's past and continuing efforts at cooperation, while conceding that the Government had "some issue" with what Defendant had said.  (*See* Doc. 147 at 3–6, 57–58.)  She also specifically argued for a sentence at the low end of the guidelines.  (*Id*. at 53–55.)

Despite Ms. Downing's zeal, the court rejected counsel's arguments, noting that Defendant's extraordinary criminal history was an appropriate factor to take into account under § 3553(a).  Defendant has not suggested what additional arguments counsel could or should have made that would have altered the outcome of the proceedings.  The fact that counsel's argument was unsuccessful does not render her performance constitutionally deficient.  Defendant is not entitled to relief.

### Ground 57–Failure to challenge denial of motion to suppress on appeal

Defendant asserts that appellate counsel Noel Lawrence was constitutionally ineffective because he did not challenge the district court's denial of the defense motion to suppress "illegally seized evidence" without a hearing.  Defendant suggests no viable basis to overturn the court's ruling.  The district court determined that the warrant upon which the search was based was supported by probable cause, and that even if it were not, the officers relied upon it in good faith.  (Docs. 38, 54, 86.)  Because the court decided the issue of probable cause by reviewing the contents of the affidavit, no hearing was required.   *See United States v. Robinson*, 336, F.3d 1293, 1296 (11th Cir. 2003).   Furthermore, Defendant waived this claim by his plea of guilty.  *United States v. Brown,* 752 F.3d 1344, 1347 (11th Cir. 2014) ("A guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the

proceedings against a defendant") (quoting *United States v. Fairchild*, 803 F.2d 1121,

1124 (11th Cir.1986) (quoting *United States v. Jackson*, 659 F.2d 73, 74 (5th

Cir.1981)).  Defendant is not entitled to relief on this claim.

### Ground 60–Failure to object to adjustment pursuant to Amendment 715

Defendant contends that counsel was constitutionally ineffective because she

did not object to the probation officer's failure to assess a two point reduction pursuant

to Guidelines Amendment 715 in light of the fact that the offense conduct involved both

crack and powder cocaine.  Amendment 715 amended then-Application Note 10(D) to

section § 2D1.1(c) of the Guidelines to provide that all defendants whose offenses

involved crack cocaine received a two level reduction, even if the offenses also involved

other substances.  Paragraph 33 of the PSR reflects that the probation officer did take

Application Note 10(D) into account, and as a result Defendant's base offense level

was 26 rather than 28.  Accordingly, there was no basis for an objection, and Defendant

is not entitled to relief on this frivolous claim.

### Ground 62[15]–Counsel's erroneous statement during opening statement

During her opening statement, Ms. Higgins referred to a computer that the

Government seized from Tyrone Whitaker which had a hard drive image of a twenty

dollar bill.  (Doc. 144 at 26.)  Agent Beyer later testified that the bill in question was not

a $20 bill, but a $50 bill with a different serial number from the bills involved in this case.

(*Id*. at 88.)  Counsel's earlier misstatement about the denomination of the bill recovered

from Whitaker's computer was not prejudicial.  The jury was instructed that what the

---

[15] Defendant's motion does not contain a Ground 61.  (Doc. 202 at 19).

lawyers said was neither evidence nor binding upon them and it was their own

recollection and interpretation of the evidence that was to control.  (Doc. 45 at 5; doc.

144 at 19.)  Counsel's simple misstatement about a minor matter did not rise to the

level of constitutionally ineffective performance, and Defendant is not entitled to relief.

### Ground 65–Failure to move for mistrial based on Government's opening statement

Defendant claims that Ms. Higgins was constitutionally ineffective because she

failed to move for a mistrial in light of the alleged misstatements during the prosecutor's

opening statement.  During his opening statement, AUSA Michael Simpson described

the evidence that had been retrieved as including "sheets of paper that had one bill --

one $20 bill printed on it front and back."  (Doc. 144 at 21).  Defendant argues that this

portion of counsel's opening statement was contradicted by the trial testimony of

Government witness Dorene Lynn Jerome who testified that she found a dollar bill, one

sheet of paper that had only one side printed on it, and a piece of money that had been

cut out but was also only printed on one side.  (*Id*. at 29–30.)  Agent Beyer's testimony

was that this case involved bills printed on the front and back of the same piece of

paper.  She also testified that at least one of the bills that was recovered had markings

reflecting that someone had unsuccessfully tried to pass the bill as it was marked by a

counterfeit detection marker.  (*Id*. at 80–81, 88.)  The Government's opening statement

was arguably supported by at least some of the evidence.  And, even if the AUSA's

summary of the evidence was not entirely accurate, as noted above, the jury had been

instructed that what the lawyers said was not evidence, and that it was their own

recollection and interpretation of the evidence that was to control.  (Doc. 45 at 5; doc. 144 at 19.)  There was no legal basis for a mistrial under the circumstances of this case, counsel was not constitutionally ineffective for her failure to so move, and Defendant is not entitled to relief.

### Ground 66–Failure to protect Defendant from providing an incriminating proffer

Defendant contends that Ms. Higgins provided constitutionally ineffective representation when she allowed him to "cooperate with the Government by debriefing after the first appearance" and Defendant provided unspecified incriminating information to AUSA Simpson.  Defendant's first appearance was held on February 28, 2008, more than three weeks after he was indicted.  (Docs. 1, 6.)  The Government states in its response that it does not recall a proffer interview.  It notes, however, that if such an interview took place, Defendant would have been entitled to the protections set forth in Federal Rule of Criminal Procedure 11(f), and Federal Rule of Evidence 410, which pertain to the admissibility of statements made in connection with plea proceedings or plea discussions.  A review of the record reveals that no statement proffered by Defendant was offered against him at any point in the proceedings. Defendant's conviction was the result of the Government's presentation of fingerprint evidence and the testimony of two individuals who were known to it as a result of other prosecutions.

Defendant asserts in his reply that the Government learned through his proffer about another individual identified before the grand jury only as "John Smith."  (*See*

docs. 230 at 9; doc. 231 at 10.)  The Government is permitted to make use of derivative

evidence gleaned from proffered statements.  *See United States v. Cusack*, 827 F.2d

696, 697–98 (11th Cir. 1987).  In any event, Defendant does not suggest how this

information resulted in prejudice to him, as the initial indictment against him had already

been returned in this case, and the purported "Mr. Smith" was apparently mentioned

only in passing.  Defendant has not shown that counsel was constitutionally ineffective

or that he is entitled to relief.

### Ground 67–enhancement of sentence based on prior state sentence

Defendant asserts in Ground 67 that it was a miscarriage of justice to punish

him, via a sentence enhancement pursuant to 21 U.S.C. § 851, by using a prior state

conviction for which he has already paid his debt to society.  It is not unconstitutional for

a court to consider a defendant's prior convictions when sentencing him for a new

offense.  *See, e.g., United States v. Gomez*, 219 F. App'x 889 (11th Cir. 2007)

(rejecting Double Jeopardy challenge).  This is because enhancement statutes "do not

change the penalty imposed for the earlier conviction," but rather "penaliz[e] only the

last offense committed by the defendant."  *Nichols v. United States*, 511 U.S. 738, 747

(1994).  Therefore, Defendant is entitled to no relief on this claim.

### Ground 68–disparate impact of crack guidelines

Defendant argues that counsel was constitutionally ineffective for failing to argue

that Defendant's sentence was unconstitutional because of the disparate impact that

the crack cocaine guidelines have on African-American defendants.  This argument has

repeatedly been rejected by the Eleventh Circuit, and counsel was not constitutionally

ineffective for her failure to make it.  *See, e.g., United States v. McClendon*, 379 F.

App'x 898 (11th Cir. 2010) (no equal protection violation resulted from harsher

sentences for crack cocaine offenses); *United States v. Hanna*, 153 F.3d 1286 (11th

Cir. 1998) (same; collecting cases).

### Ground 70[16]–failure to move to dismiss the indictment based on Speedy Trial violation

Defendant claims that Ms. Higgins was constitutionally ineffective for failing to

move to dismiss the indictment based on an alleged speedy trial violation.

Title 18 U.S.C. § 3161(c)(1) provides in relevant part that in the event of a not

guilty plea, a defendant's trial must commence "within seventy days from the filing date

(and making public) of the information or indictment, or from the date the defendant has

appeared before a judicial officer of the court in which such charge is pending,

whichever date last occurs."  Defendant's federal indictment was returned on February

5, 2008, and his first appearance before this court took place on February 28, 2008.

(Doc. 6).  Therefore, a timely trial would have ensued on or before May 9, 2008.

Defendant's trial was held on May 5, 2008.  There was no viable basis for counsel to

make a Speedy Trial objection, and she was not constitutionally ineffective for failing to

do so.

Defendant suggests in his reply that the Speedy Trial violation resulted from the

Government's failure to indict him within thirty days after a placing a hold on him after

his state arrest for passing counterfeit currency at two business establishments.  (18

---

[16] Defendant's motion does not contain a Ground 69, as the first new claim in Defendant's motion to supplement is Ground 70.

Case Nos.: 5:08cr5/RS/GRJ; 5:11cv353/RS/GRJ

U.S.C. § 3161(b)).  The two incidents in question, although also involving counterfeit currency, were not part of the offense conduct charged in this case, and do not appear to have been federally charged.  Therefore, there were no Speedy Trial implications relevant to the instant federal case, and counsel was not constitutionally required to make a frivolous objection.

### Ground 71–Unlawful federal prosecution

Defendant's argument in Ground 71 appears to be that because the conduct charged in Counts Five and Six in this case initially formed the basis for charges in the state of Florida under a facially unconstitutional statute, it was impermissible for the Government to prosecute Defendant federally based on the same conduct. Defendant's suggestion that the state's attempt to prosecute him has somehow "tainted" the offense conduct underlying his federal charges and thus rendered him immune from prosecution in any other forum is spurious.  Even if the state charges were somehow tainted, the dual sovereignty doctrine allows prosecution by dual entities that derive their power to prosecute from independent sources of authority, such as a state and federal government.  *See Heath v. Alabama*, 474 U.S. 82, 90–91 (1985); *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1360 (11th Cir. 1354).  There was no prohibition on the instant federal prosecution, and Defendant is not entitled to relief.

### Ground 73–Lack of jurisdiction

Defendant's final ground for relief is that counsel failed to move to dismiss the indictment for lack of jurisdiction.  To the extent Defendant claims that the indictment did not specify where the offense conduct occurred, he is mistaken.  Each offense is

alleged to have occurred within the Northern District of Florida.  (Docs. 1, 25.)
Furthermore, to the extent Defendant claims that the Government did not have
jurisdiction over the charged offense conduct because it did not occur on federal
property, he is mistaken.  The district courts of the United States have original
jurisdiction of all offenses against the laws of the United States, 18 U.S.C. § 3231,
irrespective of whether the conduct takes place on federal land or otherwise.  The
district court clearly had jurisdiction over the charged conduct in this case, which was an
offense against the United States.  *See, e.g., United States v. Mack*, 198 F.App'x 799,
801–802 (11th Cir. 2006); *United States v. Dumonde*, 386 F. App'x 839, 841 (11th Cir.
2010).  Counsel was not constitutionally ineffective for not making a frivolous
jurisdictional challenge, and no relief is warranted on this claim.

## CONCLUSION

For all of the foregoing reasons, the court concludes that Defendant has not
shown that any of the claims raised in his motion to vacate, set aside, or correct
sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an
evidentiary hearing is warranted.  Therefore Defendant's motion should be denied in its
entirety.

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a
certificate of appealability when it enters a final order adverse to the applicant," and if a
certificate is issued "the court must state the specific issue or issues that satisfy the
showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be
filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

Defendant's Motion to Amend/Supplement Motion to Vacate (Doc. 207) and Defendant's Second Motion to Amend (Doc. 212) are **GRANTED**, to the extent that the court has considered the claims and arguments raised therein.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The Motion By A Person in Federal Custody To Vacate, Set aside, or Correct Sentence Under U.S.C. § 2255 (Doc. 202) as amended should be **DENIED**.

2.  A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 16th  day of January, 2015.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).